IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------X
                                                         :
MIGUEL ROMAN                                             :    3:11 CV 491 (JBA)
                                                         :
V.                                                       :
                                                         :
CITY OF HARTFORD ET AL.                                  :    DATE: APRIL 7, 2014
                                                         :
---------------------------------------------------------X

RULING REGARDING DEPOSITION OF PLAINTIFF'S EXPERT WITNESS, T. MICHAEL NAULT

The discovery issues regarding the deposition of plaintiff's expert witness, T. Michael Nault have been addressed in Plaintiff's January 17, 2014 Letter, at 1-5; Plaintiff's January 31, 2014 Letter, at 3-6; Defendants' January 31, 2014 Letter, at 1-2; Plaintiff's February 21, 2014 Letter, at 2; Defendants' March 5, 2014 Letter, at 6-14; Plaintiff's March 6, 2014 Letter, at 1-2; Plaintiff's March 17, 2014 Letter, at 7-10, and in Dkt. #78.  At issue here are the Requests for Production of Documents Directed to T. Michael Nault, found in Schedule A of the Subpoena to Testify at a Deposition, dated November 25, 2013, from Defendants City of Hartford and Chief of Police Bernard Sullivan.  (Defendants' March 5, 2014 Letter, Exh. A).

Twelve of the fourteen requests are addressed in this ruling – Nos. 1-7 and 9-13. By agreement of counsel (see Dkt #78, ¶ 1), on April 2, 2014, plaintiff's counsel submitted the disputed documents from Nault for Nos. 1-5 and 7 to this Magistrate Judge's Chambers for her in camera review.[1]  (See Dkt. #81). The submitted documents are approximately one

---

[1] In camera reviews have been ordered in a number of the cases discussed in this ruling. See, e.g., Powerweb Energy, Inc. v. Hubbell Lighting, Inc., No. 12 CV 220 (WWE), 2014 WL 655206, at *4-5 (D. Conn. Feb. 20, 2014); Republic of Ecuador v. Bjorkman, No. 11-cv-1470-WYD-MEH, 2013 WL 50430, at 81-3 (D. Colo. Jan. 3, 2013);  In re Ecuador, No. 4:11 mc 73–RH/WCS, 2012 WL 5519611, at *1-4 (N.D. Fla. Nov. 2, 2012), aff'd sub nom. Republic of Ecuador v. Hinchee, 741 F3d 1185 (11th Cir. 2013).

inch thick.

Nos. 1-4 & 7 – These requests seek Nault's entire file, any and all versions of any expert reports prepared by him in connection with this matter, any information (in hard copy format or otherwise) received by him in connection with this matter, any information (in hard copy format or otherwise) sent by him in connection with this matter, and any correspondence, communications, notes, memoranda, outlines, summaries, charts, diagrams, and requests for information received by Nault from plaintiff's counsel and/or any of plaintiff's representatives.  (See Plaintiff's January 17, 2014 Letter, at 1-2, 3, Defendants' March 5, 2014 Letter at 6-8, 10 & Exh. A; Plaintiff's March 17, 2014 Letter, at 7-8).

These issues were addressed in considerable detail by U.S. Magistrate Judge Holly B. Fitzsimmons just a few weeks ago in Powerweb Energy, Inc. v. Hubbell Lighting, Inc., 12 CV 220 (WWE), 2014 WL 655206, at *1 (D. Conn. Feb. 20, 2014), with respect to defendant's discovery requests from plaintiff's expert witnesses.  As Judge Fitzsimmons explained:

> The Federal Rules of Civil Procedure contemplate expansive expert discovery.  Federal Rule of Civil Procedure 26(b)(4)(B) provides work product protection for "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Work product protection is also afforded to communications between a party's attorney and an expert witness required to provide a report under Rule 26(a)(2)(B), unless the communications: "(i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." FED. R. CIV. P. 26(b)(4)(C)(i)-(iii). The Advisory Committee Note to the 2010 Amendment to Rule 26 further explains that the protection provided by Rule 26(b)(4)(C) "is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B)and the attorney for the party on whose behalf the witness will be testifying, including any 'preliminary' expert opinions." However, the Advisory Committee Note further states that Rule 26(b)(4)(C) "does not exclude protection under other doctrines such as privilege or

independent development of the work-product doctrine." FED. R. CIV. P. 2010 Advisory Committee Note. Nevertheless, "Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions [ ... ][I]nquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by this rule." Id.

As the Advisory Committee Note to the 2010 Amendment clarifies, Rule 26 "require[s] disclosure of any material considered by [a] [testifying] expert, from whatever source, that contains factual ingredients." Moreover, the amended Rule 26 protects only the communications of counsel: "[work product] protection does not extend to an expert's own development of the opinions to be presented; those are subject to probing in deposition or at trial."

Id. at 1-2 (multiple citations omitted)(emphasis in original).  See also Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1193-95 (11th Cir. 2013), affirming In re Ecuador, No. 4:11 mc 73-RH/WCX, 2012 WL 5519611, at *1-4 (N.D. Fla. Nov. 2, 2012); In re Ecuador, 735 F.3d 1179, 1185-87 (10th Cir. 2013); Dongguk Univ. v. Yale Univ., No. 08 CV 441 (TLM), 2011 WL 1935865, at *1-2 (D. Conn. May 19, 2011).

After a careful in camera review, the following documents are discoverable by defendants under Rule 26(b)(4)(C)(i)-(ii) and/or the cases cited above:[2]

  (1)  Email, dated March 24, 2013, 2:26 p.m.;
  (2)  Email, dated March 24, 2012, 2:45 p.m.;
  (3)  Emails, dated April 21, 2012, 9:05 p.m. & April 18, 2012, 10:54 a.m.;
  (4)  Emails, dated May 7, 2012, 6:25 p.m. & March 24, 2012, 11:26 a.m.;
  (5)  Email, dated May 16, 2012, 8:13 p.m.;
  (6)  Email, dated May 18, 2012, 1:15 p.m.;
  (7)  Emails, dated May 21, 2012, 6:07 p.m. & May 21, 2012, 6:04 p.m. (but not third email on bottom);
  (8)  Emails, dated June 22, 2012, 9:49 a.m., June 12, 2012, 7:22 a.m. & May 18, 2012, 10:15 a.m.;
  (9)  Emails, dated August 7, 2012, 9:28 a.m. & 11:14 a.m. & 9:28 a.m. (but not top two emails);
  (10) Email, dated November 24, 2012, 7:56 p.m.;
  (11) Email, dated November 25, 2012, 6:46 p.m.;
  (12) Email, dated April 23, 2013, 8:45 p.m;

---

[2]These emails are addressed in the order in which they appear, which sometimes is not in chronological order.

      (13) Emails, dated June 8, 2013, 12:30 p.m. & 6:52 p.m. & June 9, 2013, 9:55 a.m.;
      (14) Email, dated July 8, 2013, 10:38 p.m. & 3:57 p.m.;
      (15) Email, dated September 29, 2013, 3:39 p.m. (but not top email);
      (16) Emails, dated December 31, 2013, 9:00 p.m. & January 2, 2014, 8:43 a.m.;
      (17) Emails, dated January 28, 2014, 7:14 p.m. & January 29, 2014, 8:40 a.m.;
      (18) Email, dated January 30, 2014, 9:53 a.m. (but not top two emails);
      (19) Emails, dated March 28, 2014, 10:52 a.m. & 10:53 a.m.;
      (20) Email, dated March 30, 2014, 11:42 a.m.;
      (21) Email, dated March 30, 2014, 12:22 p.m.;
      (22) Email, dated March 30, 2014, 11:41 a.m.;
      (23) Email, dated March 30, 2014, 11:40 a.m.;
      (24) Email, dated March 30, 2014, 11:41 a.m.;[3]
      (25) Email, dated January 5, 2014, 3:26 p.m.;
      (26) Emails, dated March 30, 2014, 11:46 a.m., January 6, 2014, 9:11 a.m. & January 5, 2014, 2:23 p.m.;
      (27) Emails, dated March 30, 2014, 11:45 a.m., November 1, 2013, 1:08 p.m. & October 31, 2013, 6:08 p.m.;
      (28) Emails, dated March 30, 2014, 11:48 a.m. & December 13, 2013, 1:28 p.m.;
      (29) Emails, dated March 30, 2014, 11:50 a.m. & November 25, 2013, 4;42 p.m.;
      (30) Emails, dated March 30, 2014, 11:51 a.m. & November 5, 2013, 12:07 p.m.;
      (31) Email, dated March 30, 2014, 12:19 p.m.;
      (32) Email, dated March 30, 2014, 12:21 p.m.;
      (33) Email, dated March 30, 2014, 12:24 p.m.;
      (34) Email, dated March 30, 2014, 12:25 p.m.;
      (35) Email, dated March 30, 2014, 12:26 p.m.;
      (36) Email, dated March 30, 2014, 12:31 p.m.;
      (37) Email, dated March 30, 2014, 12:33 p.m.;
      (38) Email, dated March 30, 2014, 12:35 p.m.;
      (39) Email, dated March 30, 2014, 12:34 p.m.;
      (40) Email, dated March 30, 2014, 12:35 p.m.;
      (41) Email, dated March 30, 2014, 12:52 p.m.;
      (42) & (43) Emails, dated March 30, 2014, 12:54 p.m. (both of them);
      (44) Email, dated March 30, 2014, 1:44 p.m.;
      (45) Email, dated March 30, 2014, 5:34 p.m.;
      (46) Email, dated March 30, 2014, 5:39 p.m.; and
      (47) Email, dated March 30, 2014, 5:40 p.m.

      Plaintiff shall provide copies to defense counsel **on or before April 21, 2014,** if they

---

[3] Unlike the previous emails, the Court is unable to determine what the attachments are for the emails, dated March 30, 11:44 a.m, 11:46 a.m., 11:47 a.m. (with email, dated December 19, 2013, 4:45 p.m.) & 12:55 p.m.  If they contain factual materials, then these four emails must be disclosed as well.

do not already have copies.[4]

No. 5 – This request seeks any final expert reports prepared by Nault in the last ten years, including preliminary versions, as well as all drafts prepared by or for him in this matter. (See Plaintiff's January 17, 2014 Letter, at 2, Defendants' March 5, 2014 Letter at 9 & Exh. A; Plaintiff's March 17, 2014 Letter, at 8). With respect to all drafts and preliminary versions in this case, as Judge Fitzsimmons explained in Powerweb Energy, "drafts of any report . . . regardless of the form in which the draft is recorded[,]" are protected under the work product protection. 2014 WL 655206, at *1 (citation omitted). The parties disagree whether defendants' request for any final expert reports prepared by Nault in the last ten years is also limited to this case only. To the extent that defendants seek copies of all of Nault's final expert reports in the last ten years, on any topic, that request is denied as overbroad. This conclusion, however, is without prejudice to renew, if after Nault's deposition there is a discrete number of final expert reports that are relevant here.[5]

Nos. 6 & 12 – No. 6 seeks all articles, treatises, policies, procedures, publications, etc. upon which Nault relied in connection with this matter; No. 12 seeks identification and production of "all" documents, publications, treatises, course or textbooks, training materials, etc. that Nault considers to reflect the generally accepted practice, policies, procedures,

---

[4]This date is premised on Nault's expert deposition being held in late April 2014. Counsel may agree to a postponement of this date, if Nault's deposition does not go forward as planned in late April.

[5]The parties did not cite any case law on this issue. The Magistrate Judge found only one case, Pittman v. Gen. Nutrition Corp., No. H-04-3174, 2007 WL 951638, at *6 (S.D. Tex. March 28, 2007), modified on other grounds, 2007 WL 1296784 (S.D. Tex. May 2, 2007), an employment discrimination action, in which plaintiff's expert on damages was ordered to produce copies of his final expert reports and testimony from other lawsuits "[i]f [the expert] has opined as a testifying expert on economic damages in other litigation within the last ten years. . . ." Id. The topic of economic damages in an employment discrimination case is far narrower than the issues raised here.

guidelines and standards associated with conducting a criminal homicide investigation during the relevant time period. (See Plaintiff's January 17, 2014 Letter, at 2-3, 5, Defendants' March 5, 2014 Letter at 9-10, 13 & Exh. A; Plaintiff's March 17, 2014 Letter, at 8-9). Plaintiff has responded that "any written sources particularly relied upon and emphasized by . . . Nault in forming his opinion and report are listed within that report, of which defendants have a copy." (Plaintiff's March 17, 2014 Letter at 9). If Nault's final report does not provide the same type of information with respect to the "generally accept practice," etc., he shall do so for the period 1987 through 1990 **on or before April 21, 2014**.[6]

No. 9 – This request seeks Nault's personnel, training and disciplinary records with the King County Police/Sheriff's Department, Seattle, Washington. (See Plaintiff's January 17, 2014 Letter, at 3-4, Defendants' March 5, 2014 Letter at 11-12 & Exh. A; Plaintiff's March 17, 2014 Letter, at 9-10). Plaintiff represents that none of these documents are within his care, custody and control. (Plaintiff's January 17, 2014 Letter, at 3-4). The Magistrate Judge agrees that Nault need not produce these documents, see Croom v. Western Conn. State Univ., 3:00 CV 1805 (PCD), 2002 WL 32503667, at *2 (D. Conn. Mar. 20, 2002), although defense counsel is obviously free to question Nault about this topic at his deposition.[7]

Nos. 10-11 – These requests seek copies of all communications between Nault and either the Innocence Project or the FBI National Academy. (See Plaintiff's January 17, 2014 Letter, at 4-5, Defendants' March 5, 2014 Letter at 12-13 & Exh. A). Without waiving plaintiff's objection, plaintiff's counsel has represented that Nault has no responsive

---

[6]See note 4 supra.

[7]Depending on Nault's testimony, the Court leaves open whether such documents may be subpoenaed in the future.

documents.  (Plaintiff's January 17, 2014 Letter, at 4-5).[8]

<u>No. 13</u> –   This request seeks all transcripts of Nault's testimony provided in any matter in which he was retained or consulted as an expert for the defense, including all expert reports prepared by him in all of those matters, in his possession, custody or control. (<u>See</u> Plaintiff's January 17, 2014 Letter, at 5, Defendants' March 5, 2014 Letter at 14 & Exh. A).  Without waiving plaintiff's objection, plaintiff's counsel represents that Nault has no documents or materials responsive to this request.  (Plaintiff's January 17, 2014 Letter, at 5).[9]

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; F<small>ED</small>. R. C<small>IV</small>. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.  <u>See also Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit);** <u>Caidor v. Onondaga County</u>, 517 F.3d 601, 603-05 (2d Cir. 2008)(failure to file timely objection to Magistrate Judge's discovery ruling <u>will</u> preclude further appeal to Second Circuit).

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** F<small>ED</small>. R. C<small>IV</small>. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for

---

[8]Defense counsel has requested an affidavit from Nault that he has no responsive documents.  (Defendants' March 5, 2014 Letter, at 12-13).  Defense counsel is free to ask him about this at his deposition.

[9]Defense counsel similarly requests an affidavit from Nault on this; again, defense counsel is free to inquire about this at his deposition.  <u>See</u> note 8 <u>supra</u>.

the District of Connecticut.

Dated at New Haven, Connecticut, this 7th day of April, 2014.

        /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge