UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MIGUEL ROMAN, | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:11-CV-0491 (JBA) |
| V. | : | |
| THE CITY OF HARTFORD, | : | |
| STANLEY LUKAS, GERALD KUMNICK, | : | |
| JAMES C. ROVELLA, STEPHEN A. KUMNICK: | | |
| JAMES PASQURELL, FREDERICK LEWIS, | : | |
| BERNARD SULLIVAN, JANE DOES, | | |
| JANE DOES | : | |
| Defendants | : | AUGUST 7, 2017 |

## DEFENDANT CITY OF HARTFORD'S OBJECTION TO MOTION TO COMPEL

The Defendants, City of Hartford and Bernard Sullivan[1], hereby object to the Plaintiff, Miguel Roman's, Motion to Compel [Dkt. #141] ("Motion"). The City of Hartford has sufficiently complied with its discovery obligations pertaining to the requested information of applicable insurance coverage, as required by Rule 26(a)(1)(A)(iv) of the Federal Rules of Civil Procedure, as well as this Court's Memorandum of Discovery Conference [Dkt. .#78], dated March 5, 2014.  To the extent that it has been unable to locate an umbrella insurance policy that the City believes to have been purchased, there is substantial justification for the City's inability to provide any additional insurance information as no information has been located within its possession, custody or control.

---

[1] To the extent that the Plaintiff's Motion is addressed to Defendant, Bernard Sullivan, retired Chief of Police, Mr. Sullivan does not possess any insurance documents of the City of Hartford and the Motion should therefore be denied as to any claim against him.  By email dated July 21, 2017, Mr. Sullivan's counsel requested that Plaintiff withdraw the Motion as to Mr. Sullivan, but to date, counsel has not received any response to her email.

1

The plaintiff's Motion should be denied in its entirety, and represents in support, as follows:

## I. PROCEDURAL HISTORY

On October 3, 2013, this case was administratively dismissed "in light of the unique, time-consuming and uncertain discovery challenges[.]" [Dkt. #71]. Under the latest scheduling order, fact discovery was to have been completed by May 30, 2014. [Dkt. #86, ¶ 2]. On September 6, 2016, plaintiff filed a Motion for Order and to Modify the Scheduling Order [Dkt. #132], which was granted in part by the Court reopening fact discovery for "very limited purposes," regarding witnesses James Looby and John Massameno, to December 2, 2016. [Dkt. #136]. Regardless, all other fact discovery has been closed in this case since May 30, 2014.

On June 13, 2017, the Magistrate Judge ordered that counsel submit status reports and in those reports of June 23, 2017, the plaintiff raised two discovery issues, including the one presented in this Motion. [Dkt. #140].

## II. FACTUAL BACKGROUND RE: PLAINTIFF'S MOTION TO COMPEL

1. On July 28, 2011, August 18, 2011, April 19, 2012, March 20, 2014 and October 5, 2016, the City of Hartford and Chief Sullivan served compliance and supplemental compliance with their Federal Rule 26(a)(1) Initial Disclosures. On July 28, 2011, the defendants complied with Rule 26(a)(1)(A)(iv) by responding that "any insurance agreement applicable to this case is available for inspection and copying at City Hall, Office of Corporation Counsel, 550 Main Street, Hartford, Connecticut." **(Exhibit 1).**

2. On October 11, 2012, the City and Chief Sullivan served compliance with Plaintiff's First Set of Production Requests. The defendants complied with request #15;

2

to produce any and all documents concerning insurance policies covering the City of Hartford between January 1988 to the present; by responding that "[a]ny such documents to the extent still in existence can be made available for inspection upon reasonable advance notice at the Hartford Corporation Counsel Office, 550 Main Street, Hartford, Connecticut."  **(Exhibit 2);** *See also,* **(P's Motion, Ex. D, 12/10/12)**

3.  Since July of 2011, and even after October 11, 2012, to the present time, plaintiff never sought to inspect any available and still existing insurance documents at the Hartford Corporation's Counsel's Office.

4.  On February 24, 2014, the Court held a discovery conference to address numerous issues raised in counsel's letters, dated January 17, January 31, and February 21, 2014.  Plaintiff never complained about insurance disclosure in those letters.

5.  During the February 24, 2014 conference, counsel discussed the City's $500,000 self-insured retention on general liability claims, and its insurance agreement with its excess general liability carrier, the Travelers Insurance Company, the potential for disclaimer and reservation of rights, as well as the City's position concerning any statutory indemnification obligations.

6.  On March 5, 2014, the Court issued a Memorandum of Discovery Conference [Dkt. #78], which included a reference that "*[b]y further agreement of counsel*, defense counsel will provide plaintiff's counsel with a complete response with respect to the issue of insurance <u>coverage</u> on or before March 21, 2014**."**

7.  On March 20, 2014, in compliance with the Memorandum of Discovery Conference [Dkt. #78], the defendants served plaintiff with their Third Supplemental

3

Compliance with their Rule 26(a) Initial Disclosures.  **(Exhibit 3).**  The defendants referenced and provided a Bates numbered copy of the entire insurance agreement between the City and the Travelers Insurance Company ("Travelers").

At the same time, City's counsel also mailed to chambers a full copy of defendants' compliance.  **(Exhibit 4).**

In moving to compel and for sanctions against the defendants, plaintiff inexplicably fails to mention defendants' compliance on March 20, 2014.

8. Between March 20, 2014 and April 20, 2016, plaintiff filed several motions pertaining to his discovery issues, but the plaintiff did not complain of any insufficient insurance disclosures.

10. For instance, on August 31, 2015, the Court held a status/discovery conference with the parties' counsel, as reflected in the Court's Order dated September 1, 2016 [Dkt. #107] and subsequently held a continued status/discovery conference on October 8, 2015. [Dkt. #109; Mem. of Discovery Conf., dated10/9/15].

11.  On December 8, 2015, the Court held a telephonic discovery conference concerning outstanding discovery issues. [Doc.#119; Amended Memorandum of Telephonic Discovery Conference dated 12/9/15].

12. Between the time of the discovery conference in December, 2015 and the next conference held in April, 2016, plaintiff had filed motions for discovery [Dkt. .#121], briefed by the parties [Dkt. #123] and ruled upon by the Court [Dkt. #124].  The plaintiff never once raised an issue that defendants did not comply with insurance disclosures.

13. However, on February 6, 2016, the Claims Commissioner awarded plaintiff six million ($6,000,000) dollars pertaining to his claims involving his arrest by Hartford police detectives.  **(Exhibit 5)**

14.  On February 26, 2016, the Travelers' claims adjuster assigned to this case, Dennis Williams, told City's counsel that Travelers was still in the process of finalizing an insurance coverage letter and analysis of coverage for this case.

15.  On April 18, 2016, the court held a status/discovery conference.  [Dkt. #130; Mem. of Discovery Conf., dated 4/18/16].  This conference was also attended by Howard Rifkin, Corporation Counsel for the City of Hartford.  During this conference, the parties discussed the implications of Mr. Roman's award of $6,000,000 by the Claims Commissioner as a potential set-off or bar to an award of damages in this pending litigation.  At that time, the City of Hartford's dire financial condition and the specter of its potential consideration of Chapter 9 bankruptcy protection was in the public domain.

It was at this conference that plaintiff's counsel complained she still had not received a copy of the City's insurance policy.  The City reminded counsel that copies of the City's general liability policy with Travelers had previously been produced, years ago, but that City counsel would be willing to provide another copy.   It was only at this time that plaintiff's counsel specifically requested that the City also produce any documents of any umbrella insurance policy that may have existed above the Travelers' policy limits for the applicable time period 1987-1988 (documents from nearly 30 years ago).  The City agreed that it would conduct a search for umbrella coverage, which it believed the City had obtained, and would send counsel another copy of the Travelers' policy it had already produced, with a copy to chambers (in, March of 2014).

16. Following the April 18, 2016 discovery conference, the City continued its efforts to determine the identity of any insurance carrier that provided umbrella insurance coverage above the Travelers' excess general liability limits. City's counsel contacted Mr. Williams of Travelers and the City's Risk Manager, Tomek Furtak (who has since retired). Mr. Williams advised City's counsel he was still working on the reservation of rights letter for this claim and that he personally reviewed the underwriting files from 1987 and 1988, and pulled selected claim files from Travelers' archives for the period from 1987 and 1988 to locate the name of an excess carrier. Mr. Williams told City's counsel that he was unsuccessful in locating documents relative to the excess carrier for 1987, however, he was able, in fact, to locate the City's excess carrier for 1988, Lexington Insurance Company ("Lexington").

City's counsel requested that Lexington conduct a search under the 1988 policy number and to determine if it provided excess coverage to the City the year prior, in 1987. Mr. Williams searched the City's underwriting file and discovered that the agent/broker who was involved in writing the City's business for 1987 was Swett & Crawford. Mr. Williams advised the City he contacted the agent, but that the agent was unable to search for records in any computer dating back that far and that all agency physical files were destroyed for those time periods under its record retention guidelines.

18. On or about May 10, 2016, the City's counsel received correspondence dated May 10, 2016, from Mr. Williams of Travelers concerning its coverage analysis on the claim.  (**Exhibit 6)**

6

19. On May 19, 2016, (within 30 days of the April, 2016 discovery conference), the defendants served plaintiff with supplemental compliance with Plaintiff's discovery requests. **(Exhibit 7)**

20. On August 18, 2016, Mr. Williams sent Lexington a copy of the insurance policy located for the period of 1988-1989, and requested that Lexington conduct a full policy search for any policy covering Mr. Roman's claim issued by Lexington.

21. On November 4, 2016, in response to a November 1, 2016 email request from plaintiff's counsel, City's counsel emailed <u>another</u> copy of its supplemental compliance dated May 19, 2016, with attachments, together with the City's Second Supplemental Compliance dated November 3, 2016. **(Exhibit 8)**

22. By letter dated February 8, 2017, from AIG Claims, Inc. (claims administrator for Lexington) to Mr. Williams, AIG/Lexington acknowledged receipt of the notice of claim for this case. **(Exhibit 9)**.

Mr. Williams requested that if AIG/Lexington could not locate a policy, that it continue search the underwriting files for the year 1988 to determine if the files contained a reference to the name of an insurance carrier or the name of the City's agent.

24. On March 17, 2017, Mr. Williams researched losses on every general liability file processed for the City by Travelers for the policy period between 1987-1988, and found there were not many cases with high value. There were, however, six claims files valued at over $15,000, so he requested retrieval of the physical files from Travelers' storage.

23. On March 20, 2017, City's counsel sent email notice to all counsel pursuant to the Federal Rules, of its intent to subpoena AIG/Lexington to a records deposition to be conducted on April 5, 2017.  **(Exhibit 10)**.  Lexington failed to show at the deposition attended by all counsel. **(Exhibit 11)**.

24. On April 10, 2017, City's counsel received a letter dated April 6, 2017, from Attorney Eric Hermanson (representing Lexington) regarding Lexington's compliance with the subpoena/deposition.   **(Exhibit 12)**

24. On May 3, 2017, Attorney Hermanson advised City's counsel that his client was still in the process of looking for documents, but so far, it had not located any policy or underwriting file for 19887-1988, and confirmed he would ask AIG whether a 1987-1988 insurer is named in any document they have been able to locate.  **(Exhibit 13)**

25. On May 22, 2017, the City's counsel received Attorney Hermanson's letter dated May 18, 2017, pertaining to the subpoena for Lexington documents.  **(Exhibit 14)**

26. On May 23, 2017, City's counsel emailed all counsel a copy of the letter dated May 18, 2017, from Lexington's counsel. **(Exhibit 15)**

27.  On May 23, 2017, Mr. Williams advised City's counsel that out of the six files selected from the loss run with high value, Travelers located three physical files, and that after carefully reviewing each file, document by document, there was no indication of the name of any excess carrier above Travelers.  It was determined that Attorney James Szerejko had defended these cases, and was recommended that the case files be retrieved and searched, if they still existed, for any indication of excess carrier information.

28. On May 31, 2017, plaintiff's counsel emailed City's counsel to request the City provide information concerning its efforts to locate the umbrella policy, "any information responsive to Fed. R. Civ. P. 26(a)(1)(A)(iv), and the Court's earlier order". **(P's Motion, Exhibit J).** This is the first notice to City's counsel that plaintiff would claim insufficient disclosure under Rule 26(a)(1)(A)(iv), or the Memorandum of Discovery Conference [Dkt. 78].

29.  On June 23, 2017, City's counsel sent a status letter to chambers indicating that the City has made good faith efforts to identify an umbrella insurance policy but that so far, it has been unable to locate any information.  **(Exhibit 16)**

I**I**.  **LAW AND DISCUSSION**

**A. Standard on Rule 37(a)(3)(A)(1) and 27(b)(2)(A) Motion to Compel**

The plaintiff moves to compel defendants to produce a "complete response concerning any and all insurance coverage available to the individual defendants and/or the defendant City of Hartford, that is, or may be, applicable to plaintiff's claims in this matter."   The plaintiff's moves under Fed.R.Civ.P. 37(a)(3)(A)(1) (sic – (a)(3)(A) [Motion to Compel Disclosure], and 37(b)(2)(A) [Failure to Comply with a Court Order].

Pursuant to Rule 37(a)(3)(A) [Motion to Compel Disclosure], "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."

**B.  Plaintiff's motion fails to include a certificate of good faith and an affidavit as required under Fed.R.Civ.P. 37(a) and L.R.Civ.P. 37.**

Pursuant to Fed.R.Civ.P. 37(a)(1), a motion for an order compelling disclosure or discovery "must include a certification that the movant has in good faith conferred or

9

attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." See also, L.R.Civ. 37(a):

> '[n]o motion pursuant to Rules 26 and 37, Fed.R.Civ.P, shall be filed unless counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail and in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution. *In the event the consultations of counsel do not fully resolve the discovery issues, counseling making a discovery motion shall file with the Court, as a part of the motion papers, an affidavit certifying that he or she has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without intervention of the Court, and has been unable to reach such an agreement.*")

L.Civ.R. 37(emphasis supplied).

The plaintiff has failed to comply with the requirements of filing a motion to compel disclosure pursuant to Federal Rule 37(a)(1) and Local Rule 37(a) for the reason that the motion fails to include a certification or an affidavit of good faith. On this procedural basis alone, the Court should deny the motion.

### C. Fed.R.Civ.P. 26(a)(1)(A)(iv) [Initial disclosures]

Plaintiff specifically asserts as a basis for its motion to compel disclosure that the City of Hartford failed to comply with Fed.R.Civ.P. 26(a)(1)(A)(iv) when it failed "to *produce any and all* relevant insurance agreements." [Doc.#141, p. 3, Part I, Background] (emphasis added).[2] However, Fed.R.Civ.P. 26(a)(1)(A)(iv) specifically requires that a party must provide to the other parties: "*for inspection and copying* as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." (emphasis added).

---

[2] Pursuant to Rule 37(a)(3)(A) [Motion to Compel Disclosure], "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."

10

On July 28, 2011, the defendants served compliance with Rule 26(a)(1)(iv) Initial Disclosures, indicating that any insurance agreement is available for inspection and copying.  **(Exhibit 1).** The Plaintiff never sought inspection and copying of any insurance agreement.  Contrary to plaintiff's contention, the defendants were never required by Rule 26(a)(1)(A)(iv), to produce copies of any and all insurance agreements.

The counter-plaintiff is correct that the initial disclosures mandated by Rule 26(a) do not require the disclosing party to produce actual documents "until the other party wishes to obtain access to the [referenced] documents by either a formal or informal discovery request." *Coppola v. Bear Stearns & Co.,* 1:02–CV–1581, 2005 WL 3159600, at *7 (N.D.N.Y. Nov. 16, 2005). Rule 26(e), meanwhile, imposes an obligation to timely supplement or correct discovery responses either when a party "learns that in some material respect the disclosure or response is incomplete or incorrect" or "as ordered by the court." Fed.R.Civ.P. 26(e).

A.V.E.L.A., Inc. v. Estate of Monroe, No. 12 CIV. 4828 KPF JCF, 2014 WL 1408488, at *2

*See, also*, Boyer v. Riverhead Central School Dist., 2006 WL 38333040, at *2, citing Calabro v. Stone, 224 F.R.D. 532, 533 (E.D.N.Y.2004) (an inspection of the insurance agreement has also been held to be sufficient for the purposes of Rule 26(a)(1)(D)).   The City complied.  The plaintiff's Motion to compel and for sanctions based upon non-compliance with Rule 26(a)(1)(A)(iv) is without basis in law and fact and should therefore be denied.

### D.  Memorandum of Discovery Conference [Dkt. .#78]

On March 20, 2014, *by agreement of counsel*, the City's counsel served plaintiff with a copy of the Travelers policy and agreed to continue its search for the identity of any applicable umbrella insurance carrier so that such a policy can be produced.  The City did not object to providing this information.  The City could not then, and still

cannot, locate any such information within its possession, custody or control, information dating back over 30 years.

Since 2011, the plaintiff never sought to inspect any insurance documents that may have been in existence. For years while discovery was pending, plaintiff never raised an issue concerning insurance, let alone, umbrella insurance. It was only after the plaintiff was awarded $6,000,000 by the Claims Commissioner and a discovery conference was held in April of 2016, where the City's potential bankruptcy filing was discussed, did the plaintiff ever first request information to be disclosed of umbrella insurance. After plaintiff made this specific request, within 30 days of the conference, defendants served supplemental compliance with information that it had available in its custody, possession and control. **(Exhibit 7).**

Again, there is no basis for the granting of Plaintiff's Motion when there is substantial justification for the City's inability to produce the information requested. The City has provided information that it currently has available. Sanctions are unwarranted given defendants' compliance and given the substantial justification for its inability to locate the information counsel requested in April of 2016.

### E. Plaintiff's Interrogatories and Production Requests

In March of 2014, the defendants served *supplemental* compliance with discovery requests by identifying and producing a copy of the only available applicable insurance policy in defendants' possession, custody and control. **(Exhibit 3)** Any other information was not in the City's possession, custody and control at the time. There is no valid basis for imposition of sanctions against the City when there is adequate and sufficient justification for its inability to obtain information concerning an umbrella policy reasonably believed to have been issued in 1987, over 30 years ago,

12

and when the City has demonstrated its good faith efforts to obtain the information once it was specifically requested. The cases cited by the plaintiff are therefore distinguishable on their facts. This is not a case of a party stating that there was no insurance and then, there was. This is not a case where a party objects to providing information that the opposing party has a right to obtain. The City, with the assistance of its agents and representatives, continues its search for any records responsive to the request for an applicable umbrella policy made by plaintiff in April, 2016 and will supplement responses as information is located.

### F. Untimely and Lack of Good Cause for Reopening Fact Discovery

On May 22, 2014, the Court set a deadline for supplemental responses to written fact discovery for May 27, 2014. [Dkt. .#87]. On May 22, 2014, the City and Chief served their supplemental responses in accordance with the Court's scheduling order. (Exhibit).  Fact discovery in this matter closed on May 30, 2014. [Dkt. #86, ¶ 2]; [Doc.#136, p. 1, n. 1].  The plaintiff's Motion, filed July 5, 2017, raises a discovery issue more than three years after the discovery deadline, is untimely and without good cause.

"Rule 37 does not establish a deadline for the filing of a motion to compel; rather, that deadline is prescribed by Rule 16, which requires the district court to establish a scheduling order limiting the time to file motions and complete discovery." Casagrande v. Norm Bloom & Son, LLC, No. 3:11-CV-1918 CSH, 2014 WL 5817562, at *2 (D. Conn. Nov. 10, 2014) (citations omitted); *see also* Gucci Am., Inc. v. Guess?, Inc., 790 F. Supp. 2d 136, 139–40 (S.D.N.Y. 2011) ("Though Rule 37 does not establish time limits for such a motion, a party seeking to file a motion to compel after discovery has closed must similarly establish good cause.") (citations omitted).

13

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "A party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery." Spencer v. Int'l Shoppes, Inc., No. CV 06-2637 AKT, 2011 WL 3625582, at *1 (E.D.N.Y. Aug. 16, 2011) (citations omitted). The plaintiff has failed to articulate good cause for reopening discovery and for moving to compel discovery beyond the established discovery deadline. The scheduling of a pre-filing conference is imminent with briefing deadlines on dispositive motions to be scheduled. Surveys, Inc. v. Tonga Partners, L.P., No. 06CIV.2692KMWRLE, 2008 WL 4443828, at *16 n.23 (S.D.N.Y. Sept. 29, 2008) ("Plaintiff fails to demonstrate good cause for its failure to conduct discovery on this issue prior to the discovery cutoff date....The Court will not reopen discovery on this issue at the summary judgment stage.").

Plaintiff has had more than ample opportunity to propound additional discovery on insurance, and at numerous discovery conferences held in this case to complain about any alleged lack of compliance.  Rule 37 "provides no deadline for the filing of a motion to compel.  However, Courts have held that where a [moving party] is aware of the existence of documents before the close of discovery and issues discovery requests subsequent to the discovery deadline, the discovery requests should be denied." In re Health Mgmt., Inc., No. CV 96-0889 (ADS), 1999 WL 33594132, at *5 (E.D.N.Y. Sept. 25, 1999) (citations omitted).

Under these circumstances here, plaintiff has not shown good cause to disturb the discovery cutoff date of May 30, 2014 and to again subject the defendants to the

14

additional burden, cost and expense of engaging in additional discovery efforts and in responding to discovery requests on an issue that is tangential to the case.

### III. CONCLUSION AND RELIEF REQUESTED

The Plaintiff's Motion to compel, sanctions, and to conduct additional discovery should be denied in its entirety. There is no demonstrated good cause to reopen discovery to compel production and to permit plaintiff to engage in additional discovery on insurance issues. The City is aware of its ongoing obligations to supplement disclosures and discovery responses and will continue in its efforts to locate umbrella insurance coverage information. To date, however, despite reasonably calculated, best efforts by its agents and representatives, the City has been unable so far to locate any such documents or information from over 30 years ago, within its possession, custody or control. Sanctions are wholly unwarranted under the circumstances and should be denied.

**THE DEFENDANTS:**
CITY OF HARTFORD and
POLICE CHIEF, BERNARD SULLIVAN


BY: /s/Nathalie Feola-Guerrieri
Nathalie Feola-Guerrieri
Senior Assistant Corporation Counsel
550 Main Street, Suite 210
Hartford, CT 06103
Federal Bar No. ct 17217
Telephone (860) 757-9700
Facsimile (860) 722-8085
Email: feoln001@hartford.gov

## **CERTIFICATION**

This is to hereby certify that on August 7, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System:

                                           /s/ Nathalie Feola-Guerrieri
                                           Nathalie Feola-Guerrieri